UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLORY MOSTEK,

      Plaintiff,

                                            Case No. 11-13166

v.                                       Honorable Patrick J. Duggan

GENESEE COUNTY ANIMAL
CONTROL,

      Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on Defendant Genesee County Animal

Control's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56,

filed January 11, 2012.  According to Defendant, it served Plaintiff with a copy of the

motion via regular mail on the same date.  This Court sent a notice to the parties on

January 12, 2012, indicating that the motion for summary judgment had been filed and

reminding them of the provisions of Local Rule 7.1, specifically subsection (e) which

provides that "[a] response to a dispositive motion must be filed within 21 days after

service of the motion. Nevertheless, Plaintiff has not responded to the motion.

On February 8, 2012, this Court issued a notice informing the parties that it is

dispensing with oral argument with respect to Defendant's motion pursuant to Eastern

District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court now grants

the motion.

## I.    Factual and Procedural Background

This action arises from the  removal of a neglected, gravely-ill cat from Plaintiff's

backyard on July 21, 2011, by Genesee County Animal Control Officer Melissa Miller.

On that date, Genesee Animal Control received a complaint of a cat being kept in a box in

the backyard of Plaintiff's home in Flint, Michigan.  (Def.'s Mot. Ex. 1 ¶ 3.)  The

complainant indicated that the cat was being kept with no shelter, in bright sunlight, and

was in distress.  (*Id*.)

Upon her arrival at Plaintiff's home, Officer Miller observed the backyard of

Plaintiff's property from the corner of a neighbor's property.  (*Id*. ¶ 5.)  She observed a

box sitting in bright sunlight and could hear the sounds of a cat coming from the box.

(*Id*.) Officer Miller knocked on the door of the home and received no answer.  (*Id*. ¶ 6.)

She observed an individual, believed to be Plaintiff, inside the home through an open

window.  (*Id*.)  When Officer Miller asked Plaintiff to come out to discuss the matter,

Plaintiff refused and closed the window.  (*Id*.)

Officer Miller proceeded to the backyard to investigate the box and found a cat, that

was approximately seven weeks old, extremely thin, covered in fleas and flea bites, and

with one eye impacted with pus and sores.  (*Id*. ¶ 7.)  Although the box contained food

and water, it was in direct sunlight and the temperature was in excess of 90 degrees

Fahrenheit, with a heat index in excess of 110 degrees.  (*Id*.)

Officer Miller determined that the cat needed immediate veterinary care, and so she

picked up the cat and proceeded to her vehicle.  (*Id*. ¶¶ 7, 8.)  As she did so, Plaintiff

2

exited the house and confronted Officer Miller, screaming at her.  (*Id.* ¶ 8.)  Another individual, Blaine Martinez, then arrived in a vehicle and spoke with Officer Miller.  (*Id.*)  Officer Miller explained to Mr. Martinez that the cat needed immediate care and then left the property to transport the cat to the Genesee County Animal Shelter.  (*Id.* ¶ 9.)

While Officer Miller was on her way to the shelter, Mr. Martinez contacted Genesee County Animal Control Chief Stepheni Lazar ("Chief Lazar") and informed her that he had been appointed Plaintiff's legal guardian due to Plaintiff's health.  (Def.'s Mot. Ex. 2 ¶ 5.)  Mr. Martinez informed Chief Lazar that Plaintiff did not own the cat, but found it and was attempting to nurse it back to health.  (*Id.* ¶ 6.)  Chief Lazar stated that the cat needed immediate veterinary care and would be returned to Plaintiff if she could take it immediately to a veterinarian.  (*Id.* ¶ 7.)  Mr. Martinez stated that Plaintiff could not afford a veterinarian and that Plaintiff did not want the cat back.  (*Id.*)

After a veterinarian at the animal shelter examined the cat, it was determined that the cat needed to be euthanized to end its suffering.  (*Id.* ¶ 8; Def.'s Mot. Ex. 1 ¶ 10.)

At some point later that day, July 21, 2011, Plaintiff filed her *pro se* complaint against Defendant in this Court.  The following statement is all that is contained in Plaintiff's complaint: "Illegal entry, unlawful entry and removal of a pygmy cat known as the male cat Overhang." (Doc. 1.)  On July 26, 2011, this Court issued a show cause order requiring Plaintiff to demonstrate federal subject matter jurisdiction over her lawsuit.  The Court noted in its show cause order that Plaintiff's complaint also failed to comply with Federal Rule of Civil Procedure 8(a) and that if she establishes the Court's jurisdiction to

3

adjudicate the matter, she would be required to amend her complaint to satisfy Rule 8's requirements.

On August 8, 2011, Plaintiff filed two documents in response to the show cause order. In one of the documents, she states that "the local official of the county of Genesee entered the property then later the private residence without a warrant . . . to remove the male pygmy cat known as Overhang." (Doc. 7, capitalization removed.) She then cites to *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371 (1980). In the other document, Plaintiff asserts that "[o]n July 21, 2011 the male pygmy cat known as Overhang was taken into custody by [a] local official . . ." (Doc. 8, capitalization removed.)

Based on these pleadings, and liberally construing Plaintiff's *pro se* complaint, this Court concluded that she was asserting a Fourth Amendment unlawful search and/or seizure claim against Defendant pursuant to 42 U.S.C. § 1983. The Court therefore concluded that it has subject matter jurisdiction and set aside the show cause order on August 10, 2011. Because Defendant soon thereafter filed an answer to the complaint, reflecting that it was aware of the relevant facts concerning Plaintiff's lawsuit and understood Plaintiff to be asserting a violation of her Fourth Amendment rights, the Court did not require Plaintiff to amend her complaint to comply with Federal Rule of Civil Procedure 8.

As indicated earlier, Defendant filed the pending summary judgment motion on January 11, 2012. In the motion, Defendant argues that it is entitled to summary judgment because Plaintiff fails to establish a municipal policy, practice, or custom to

4

hold it liable for her injuries.  Defendant further argues that its employee did not violate

Plaintiff's Fourth Amendment rights because there were "exigent circumstances"– a cat in

need of immediate medical attention– justifying the warrantless entry into Plaintiff's

backyard and because Plaintiff denied ownership of the animal and therefore could not

claim a wrongful seizure of her property.

## II.    Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central

inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

After adequate time for discovery and upon motion, Rule 56(c) mandates summary

judgment against a party who fails to establish the existence of an element essential to

that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the

"nonmoving party must come forward with 'specific facts showing that there is a genuine

issue for trial.'"  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine

issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

### III.   Applicable Law and Analysis

To state a claim against an individual under § 1983, a plaintiff must set forth facts establishing: (1) the deprivation of a right secured by the Constitution or laws of the United States, (2) caused by a person acting under the color of state law.  *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  A municipality and/or a municipal entity, such as Genesee County and its Animal Control Office, can be held liable for a constitutional violation by its employee(s) only if the misconduct arose out of some municipal policy or practice.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036 (1978).  The "plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

Plaintiff's one sentence complaint fails to allege a municipal policy, custom, or practice leading to the alleged violation of her Fourth Amendment rights.  Having failed to respond to Defendant's summary judgment motion, she has not otherwise identified

6

such a basis for holding Defendant liable for Officer Miller's action or much less

presented evidence to support municipal liability in this case.  For this reason, Defendant

is entitled to summary judgment.

Additionally, Defendant is entitled to summary judgment because Plaintiff cannot

demonstrate a violation of her Fourth Amendment rights by its employee.  Under the

doctrine of qualified immunity, "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738

(1982).  It has not been clearly established that an animal control officer violates an

individual's Fourth Amendment rights when the officer enters the individual's property to

aid an animal in need of immediate medical care.  The Michigan Court of Appeals in

contrast has held that animal control officers may enter property and remove animals that

have been lawfully observed and appear to be in danger.  *See Mills v. Rodabaugh*, Nos.

08-14291, 09-10921, 2009 WL 5171846, at *6 (E.D. Mich. 2009) (citing cases).  Because

Plaintiff has disclaimed ownership of the cat, Officer Miller did not violate Plaintiff's

property rights by seizing it.  *See United States v. Knox*, 839 F.2d 285, 294 (6th Cir.

1988) (holding that the defendant affirmatively disclaimed ownership of luggage and

therefore had no Fourth Amendment right to object to its search).

**IV.    Conclusion**

For the reasons set forth above, Plaintiff's fails to demonstrate a genuine dispute as

to any material fact and Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is

**GRANTED**.

Date:  March 2, 2012                    s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Clory Mostek
1407 S. Packard Ave.
Burton, MI 48509

Andrew C. Thompson, Esq.